UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CLAUDE K. JONES,

          Petitioner,

vs.                                                    Case No. 8:03-cv-2687-T-17MAP

DON GALDIS,

          Respondent.

_____

O R D E R

    This cause is before the Court on Claude K. Jones (Jones') 28 U.S.C. § 2254 petition for writ of habeas corpus.  Jones challenges his conviction and sentence entered by the Circuit Court for the Thirteenth Judicial Circuit, Hillsborough County, Florida.

    Jones was indicted for the first degree murder of Gordon Shellhouse.  He was also charged with grand theft of a motor vehicle, aggravated fleeing to elude, and grand theft of a firearm.  Jones proceeded to jury trial held November 27-29, 2000, and was found guilty as charged.  He was adjudicated guilty in accordance with the verdicts and sentenced to life in prison for the first degree murder, seven and one-half years for grand theft of the motor vehicle, and three years incarceration on the remaining counts.  Jones also entered guilty pleas in two unrelated cases, case nos. 00-6394 and 00-4893.  All sentences ran concurrently.

    The state district court of appeal per curiam affirmed the convictions and sentences. Jones v. State, 818 So. 2d 512 (Fla. 2d DCA 2002) [Table].  Jones filed a Rule 3.850 motion for post-conviction relief that was summarily denied on February 12, 2003.

Rehearing was denied on April 4, 2003.  Jones appealed, and the state district court of appeal per curiam affirmed the denial of relief. Jones v. State, 864 So. 2d 412 (Fla. 2d DCA 2003) [Table].

During the pendency of his Rule 3.850 appeal, Jones filed a pro se state petition for writ of habeas corpus dated August 7, 2003, in which he alleged his appellate counsel in his direct appeal was ineffective.  On September 4, 2003, Jones' state petition for writ of habeas corpus was denied without written opinion, in Case No. 2D03-3602.  Rehearing was denied October 3, 2003.  Jones then filed the present federal petition in December 2003.

STANDARDS OF REVIEW

Because Jones filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  Penry v. Johnson, 532 U.S. 782, 792 (2001); Henderson v. Campbell, 353 F.3d 880, 889-90 (11th Cir. 2003); Maharaj v. Sec'y of Dept. of Corrections, 304 F.3d 1345, 1346 (11th Cir. 2002).  The AEDPA "establishes a more deferential standard of review of state habeas judgments," Fugate v. Head, 261 F.3d 1206, 1214 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002); see, Bell v. Cone, 2005 WL 123827 (U.S. Jan. 24, 2005) (habeas court's standard for evaluating state-court ruling is highly deferential, which demands that state-court decisions be given benefit of the doubt)[citing 28 U.S.C.A. § 2254(d)]).   AEDPA is relevant to a review of this Petition.

**A.**

2

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); <u>Snowden v. Singletary</u>, 135 F.3d 732, 735 (11th Cir. 1998). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838,  842 (1999).[1] <u>See</u> <u>also</u>, <u>Henderson v. Campbell</u>, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting <u>Judd v. Haley</u>, 250 F.3d 1308, 1313 (11th Cir. 2001)); <u>Snowden v. Singletary</u>, 135 F.3d at 735 ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (quoting <u>Duncan v. Henry</u>,  513 U.S. 364, 365 (1995)).

Exhaustion of state court remedies generally requires a petitioner to pursue discretionary appellate review.  "'[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process, including review by the state's court of last resort, even if review in that court is discretionary." <u>Pruitt v. Jones</u>, 348 F.3d 1355, 1358-59

---

[1] <u>O'Sullivan v. Boerckel</u>, 526 U.S. at  845, suggests a shift by the United States Supreme Court with regard to the terminology used in discussing exhaustion principles.  The majority of the [<u>O'Sullivan</u>] Court concluded that an issue that was not properly presented to the state court, and which can no longer be litigated under state procedural rules, did not satisfy the exhaustion requirement, and is procedurally barred from federal review. 526 U.S. at 839-840, 848.  As noted by the dissenting opinion, prior case law characterized issues for which no vehicle existed for state court litigation to be exhausted but procedurally barred. 526 U.S. at 850, 852; see <u>Coleman v. Thompson</u>, 501 U.S. 722, 732 (1991); <u>Engle v. Isaac</u>, 456 U.S. 107 (1982); <u>Picard v. Connor</u>, 404 U.S. 270 (1971).

There are no unexhausted claims in Jones' petition that can still be litigated in state court. If a claim is procedurally barred, federal review is precluded by virtue of that bar, and the exhaustion, or lack of exhaustion, is irrelevant. <u>O'Sullivan</u>, 526 U.S. at 848.

(11th Cir. 2003)(citing O'Sullivan, 526 U.S. at 845).  This is required even if the state Supreme Court rarely grants such petitions and usually answers only questions of broad significance.  O'Sullivan, 526 U.S. at 845-46.

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001).  Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." Smith v. Jones, 256 F.3d at 1138.  "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." Henderson v. Campbell, 353 F.3d at 891(quoting Judd v. Haley, 250 F.3d at 1313).

As stated above, a procedural default will only be excused in two narrow circumstances.  First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. Henderson v. Campbell, 353 F.3d at 892; Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995).  To show "'prejudice,"  Jones must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  Hollis v. Davis, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting United States v. Frady, 456 U.S. 152,

170 (1982). Jones must show that there is at least a reasonable probability that the result of the proceeding would have been different.  Henderson v. Campbell, 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Henderson v. Campbell, 353 F.3d at 892.  This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent."  Henderson v. Campbell, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (2001) (citing Calderon v. Thompson, 523 U.S. 538, 559 (1998); Murray v. Carrier, 477 U.S. 478, 495-96 (1986) (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent").  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995). In addition, " '[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." Calderon, 523 U.S. at 559 (quoting Schlup, 513 U.S. at 324) (explaining that "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

The Schlup Court stated that the petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial. Schlup

513 U.S. at 324.   This fundamental miscarriage of justice exception is not available unless

"the petitioner shows, as a factual matter, that he did not commit the crime of conviction."

Ward v. Cain, 53 F. 3d 106, 108 (5th Cir. 1995) (denying certificate of probable

cause)(footnote omitted).

No Presumption that State Court Ignored Its Procedural Rules

Finally, this Court cannot presume that a Florida court ignores its own procedural

rules when the Court issues only a one-sentence denial of relief, which is essentially a

summary dismissal.  Such a ruling does not suggest that the state court resolved the issue

on the federal claim presented. See Coleman, 501 U.S. 722,  735-36 (1991);  Kight v.

Singletary, 50 F.3d 1539, 1544-1545 (11th Cir. 1995) (applying procedural bar where state

court's summary dismissal did not explain basis for ruling); Tower v. Phillips, 7 F.3d 206,

209 (11th Cir. 1993) (applying bar where state court did not rule on claims presented).

**B.**

Pursuant to AEDPA, habeas relief may not be granted with respect to a claim

adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application, of clearly established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Price v. Vincent, 123 S.Ct. 1848, 1852-53 (2003); Clark v. Crosby,

335 F.3d 1303, 1308 (11th Cir. 2003); Harrell v. Butterworth, 251 F.3d 926, 930 (11th Cir.

2001).   "Clearly established Federal law" is the governing legal principle, not the dicta, set

forth by the United States Supreme Court at the time the state court issues its decision.

Lockyer v. Andrade, 538 U.S.63, 71-72 (2003).  Where no Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said that the state court's conclusion is contrary to clearly established governing federal law.  Mitchell v. Esparza, 124 S.Ct. 7, 10 (2003); Clark v. Crosby, 335 F.3d at 1308-10; Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir. 2003).

A state court decision is "contrary to" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.  Mitchell v. Esparza, 124 S.Ct. at 10 (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  See also Price v. Vincent, 123 S.Ct. at 1853; Lockyer v. Andrade, 538 U.S. at 75-77.  A state court does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent.  Early v. Parker, 537 U.S. 3, 8 (2002); Mitchell v. Esparza, 124 S.Ct. at 10; Parker v. Secy of Dept. of Corrections, 331 F.3d 764, 775-76 (11th Cir. 2003).

A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct governing legal rule from Supreme Court cases but unreasonably applies it to the facts of the particular inmate's case; or if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply; or unreasonably refuses to extend that principle to a new context where it should apply.  Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000).  The "unreasonable application" inquiry requires the state court decision to be more than

incorrect or erroneous; it must be objectively unreasonable.  Lockyer v. Andrade, 538 U.S. at 75-77; Williams, 529 U.S. at 409-10; Penry v. Johnson, 532 U.S. at 791-792; Woodford v. Visciotti 537 U.S. 19, 25 (2002); Mitchell v. Esparza, 124 S.Ct. at 11-12; Price v. Vincent, 123 S.Ct. at 1853.

Whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. See Holland v. Jackson, 124 S.Ct. 2736, 2737-2738 (2004) (citing Yarborough v. Gentry, 540 U.S. 1 (2003)) (per curiam) (denying relief where state court's application of federal law was supported by the record); Miller-El v. Cockrell, 537 U.S. 322, 348 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); cf. Bell v. Cone, 535 U.S. at 697, n. 4  (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

## C.

A factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Henderson, 353 F.3d at 890-91.  The statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact.  Parker v. Head, 244 F.3d 831, 836 (11th Cir. 2001).

A petitioner who "failed to develop" the factual basis for a claim while in state court as a result of the petitioner's lack of diligence is barred from doing so in federal court (subject to the very narrow exceptions set out in § 2254(e)(2)). Williams v. Taylor, 529 U.S. at 433-34.

## D.

**Ineffective Assistance of Counsel Claims**

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his or her counsel rendered ineffective assistance: 1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness"; and 2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   Id. at 687-88; see also, Wiggins v. Smith, 123 S.Ct. 2527 (2003); Williams v. Taylor, 529 U.S. 362 (2000).   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).  This judicial scrutiny is "highly deferential."  Id. at 477.  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 689-90; Bell v. Cone, 535 U.S. 685, 698 (2002).  Because the ultimate resolution of the ineffective assistance of counsel claims are mixed questions of law and fact, Thompson v. Haley, 255 F.3d 1292, 1297 (11th Cir. 2001); Meeks v. Moore, 216 F.3d 951, 959 (11th Cir. 2000), the presumption of correctness contained in § 2254(e)(1) does not apply to this determination.  Parker v. Head, 244 F.3d at 835-837.  "[T]he Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims."  Williams, 529 U.S. at 391.

"To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled. ' "

Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting Burger v. Kemp, 483 U.S. 776 (1987)). "Therefore, the cases in which habeas petitioners can properly prevail an the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir.), cert. denied, 513 U.S. 899 (1994).

The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take. See Chandler, 218 F.3d at 1315. An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation. Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment. Chandler, 218 F.3d, at 1314 n. 15.

The Eleventh Circuit has set forth the applicable legal principles for reviewing a claim of ineffective assistance of appellate counsel.

> A defendant has a right to counsel to aid in the direct appeal of his or her criminal conviction. See Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). This right to counsel is violated when appellate counsel is ineffective. Id.; Alvord v. Wainwright, 725 F.2d 1282 (11th Cir. 1984). This Circuit has applied the Supreme Court's test for ineffective assistance at trial, see Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to guide its analysis of ineffective assistance of appellate counsel claims. See Orazio v. Dugger, 876 F.2d 1508 (11th Cir. 1989). Therefore, [Petitioner] must show that his appellate counsel's performance was deficient and that this performance prejudiced the defense. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.

Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991), cert. denied, 502 U.S. 1077 (1992).

It is clear that "[t]he standard of proof and standard of review are the same in the context of ineffective assistance of appellate counsel as in the context of ineffective

assistance of trial counsel." <u>Alvord v. Wainwright</u>, 725 F.2d 1282, 1291 (11th Cir.), <u>cert</u>. <u>denied</u>, 469 U.S. 956 (1984).

### E.

Generally, claims alleging a violation of state law are not subject to review in federal habeas proceedings. <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984); <u>McCullough v. Singletary</u>, 967 F.2d 530, 535-36 (11th Cir.1992). To the extent that a federal question is raised in the federal habeas petition, the federal question was not exhausted in state court if the issue were raised only as a state law claim in state court. <u>Anderson v. Harless</u>, 459 U.S. 4, 6-8 (1982).

Finally, in the event constitutional error is found in a habeas proceeding, the relevant harmless error standard is set forth in <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993). The test is "less onerous" then the harmless error standard enunciated in <u>Chapman v. California</u>, 386 U.S. 18 (1967). "The test is whether the error had substantial and injurious effect or influence in determining the jury's verdict. Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" <u>Brecht</u>, 507 U.S. at 637. Although no constitutional error has occurred in Jones's case, any possible error would clearly be harmless beyond any reasonable doubt based on the facts and the record herein.

### DISCUSSION

A review of the record demonstrates that, for the following reasons, Jones' petition must be denied.

Ground One

Jones contends the state trial court erred by denying his counsel's motion seeking severance of the grand theft charges (counts two and four) from the first degree murder and aggravated fleeing charges (counts one and three). This Court does not have subject matter jurisdiction to address this claim. Determination of whether joinder of counts in a charging document is appropriate is solely a state law matter for which federal habeas corpus relief does not life.

Only where joinder of offenses actually renders the state trial fundamentally unfair does the issue of joinder rise to the level of a due process violation. United States v. Lane, 474 U.S. 438, 446 n.8 (1986). See Nichols v. Sullivan, 867 F.2d 1250, 1253 (10th Cir. 1989) (citing United States v. Lane); Tribbitt v. Wainwright, 540 F.2d 840, 841 (5th Cir. 1976). In Jones' case, his trial counsel litigated a motion for severance of two grand theft counts in his indictment prior to trial. However, at trial, Jones did not timely object to the adverse ruling when the evidence of the grand theft charges was introduced. Nor did he preserve for review a federal due process claim regarding the severance ruling at trial.

On direct appeal, the State expressly raised the lack of preservation bar on the severance issue, and the silent affirmance is presumed to rest on the asserted independent and adequate state procedural ground. See Bennett v. Fortner, 863 F.2d 804, 807 (11th Cir.), cert. denied, 490 U.S. 1071 (1989) ("This circuit to a point has presumed that when a procedural default is asserted on appeal and the state appellate court has not clearly indicated that in affirming it is reaching the merits, the state court's opinion is based on the

procedural default"); see also, Alderman v. Zant, 22 F. 3d 1541, 1550 n. 10 (11th Cir. 1994) (collecting cases), cert. denied, 115 S.Ct. 673 (1994).

Moreover, Jones raised only state law issues on direct appeal.  Pursuant to Duncan v. Henry, 513 U.S. 364 (1995), briefing an issue as a matter of state law is not sufficient to exhaust a federal claim on the same grounds.  Jones' claim is procedurally defaulted for his failure to raise the federal constitutional aspect of the claim both at trial and on direct appeal.

Because Jones could, if at all, have preserved and raised the constitutional dimension of his claim regarding the severance issue at trial and on direct appeal, he was precluded from doing so collaterally in a Rule 3.850 motion.  This circuit has long recognized this aspect of Florida law. Sullivan v. Wainwright, 695 F.2d 1306, 1310 (11th Cir.) (claims that could have been or should have been preserved at trial and then raised on direct appeal and were not are procedurally barred), cert. denied, 464 U.S. 922 (1983); Harmon v. Barton, 894 F.2d 1268, 1270 (11th Cir.), cert. denied, 111 S. Ct. 96 (1990) (under Florida law, an issue that could have been raised on direct appeal may not be reviewed in a Rule 3.850 motion).

Jones has not shown cause and prejudice to overcome the procedural bar and has not established the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was actually innocent.

In ground one of his state petition for writ of habeas corpus, Jones faulted his appellate counsel for not raising the severance issue in constitutional terms.  To the extent Jones attempted to show as cause ineffectiveness of appellate counsel, his state petition

for writ of habeas corpus was facially and legally insufficient to establish both the deficient performance and prejudice prongs of Strickland v. Washington.  See Jackson v. Herring, 42 F.3d 1350, 1358 (11th Cir.) (in order to constitute cause sufficient to overcome procedural default, counsel's performance must be constitutionally ineffective under Strickland), reh'g denied, 51 F.3d 1052 (11th Cir. 1995).

Any federal due process claim was not preserved for review.  Moreover, Jones did not allege a sufficient basis on which to conclude there was a reasonable probability of a different outcome had his appellate counsel raised constitutional error in allowing his offense to be tried in a single jury trial.

Any further cause allegation is barred by the two-year limitation period governing a Rule 3.850 motion, Whiddon v. Dugger, 894 F.2d 1266 (11th Cir.)(recognizing and applying two-year bar of Rule 3.850), cert. denied, 498 U.S. 834 (1990); by the two year limitation governing state habeas petitions, see Fla. R. App. P. 9.141(c)(4); as well as the state's successive petition doctrine. Foster v. State, 614 So. 2d 455, 458 (Fla. 1992); Zeigler v. State, 632 So. 2d 48, 51 (Fla. 1993). Furthermore, this Court should not even discuss the merits of a claim that has been procedurally defaulted in state court. Kight v. Dugger, 50 F.3d 1539, 1543 (11th Cir. 1995).

Further, and alternatively, Jones does not meet his burden under the highly deferential AEDPA standards of review.  He fails to show that the state decision on his claim was an unreasonable application of clearly established precedent of the United States Supreme Court.

Pursuant to Florida law, "two or more offenses that are triable in the same court may be charged in the same indictment or information in a separate count for each offense,

when the offenses . . . are based on the same act or transaction or on two or more connected acts or transactions." Fla. R. Crim. P. 3.150(a).  Rule 3.152(a)(2)(A) provides for severance before trial "on a showing that the severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense."   If and to the extent Jones relied on his state law arguments in his direct appeal, and even if the state district court of appeal reached the severance issue substantively, the state decision settles that as a matter of state law, severance was not required under the facts of this case.

The decision regarding severance is not contrary to or an unreasonable application of Supreme Court precedent.  A misjoinder "rises to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial."  United States v. Lane, 474 U.S. at 446 n. 8 ("Improper joinder does not, in itself, violate the Constitution.")  In Jones' case, it is objectively reasonable to conclude the single trial did not cause him any prejudice, and thus even if his single trial constituted a misjoinder, there was no constitutional due process violation.

It can be reasonably determined that evidence undergirding the theft offenses was connected in material respect and logically related to the murder and aggravated fleeing offenses.  The State adduced evidence showing that Jones had suspected the murder victim was an informant who would lead law enforcement to the stolen truck and stolen .357 handgun.  In addition, the State adduced evidence showing the stolen vehicle that Jones was driving when he fled the murder scene was used to transport the murder victim's body. In addition, the murder weapon was stolen from the driver of the stolen truck.

The evidence adduced at trial shows that on Friday, January 21, 2000, the victim, Gordon Shellhouse (Charlie), was "picked up" was Hillsborough County Sheriff's deputies

because they believed he had an outstanding warrant.  Unable to verify the active warrant because police computers were "down," deputies released Charlie from custody. (Trial transcript pp. 261- 262, 286-287).

The State adduced testimony showing Jones had been aware Charlie had an outstanding warrant and had been picked up by the police and released that same day (Friday).  Jones suspected Charlie was an informant.  Ronald Richardson, Jr., testified that at least four or five days prior to the murder, Jones was driving a black four-door pickup truck and Ronald's father, "Kempie," did not want the stolen truck on his property because he (Kempie) was on probation.  (Trial transcript pp. 175-176).  That Friday night, Jones parked in a neighbor's drive, and when William Heffner asked Jones what he was doing there, Jones said that he was waiting for "someone" who was going to give Kempie "some shit" and Jones was going to teach him a lesson. (Trial transcript pp. 239-240).

The next morning (Saturday), Jones called Tony Pidala to pick up Kempie and take him to the hospital. (Trial transcript pp. 178, 181).  Jones also gave Steve Eckel $5 to "get beer" and just "stay away." (Trial transcript pp. 124-125; 137).  Instead, Eckel went inside the trailer to check on Kempie. (Trial transcript p. 126).  When Pidala arrived to take Kempie to the hospital, Jones asked Tony to talk to "Charlie" because he suspected that Charlie was an informant/snitch. (Trial transcript, pp. 148-151).  While Tony was talking to Charlie (with Jones) Tony heard a loud bang and Charlie "just disappeared."  Tony looked to his left and saw Jones holding a big, fat gun.  Charlie had been shot in the forehead. (Trial transcript pp. 153-155; 159).  Concerned for his own life, because "it's not every day you see someone get blown away," Pidala got into his automobile and left. (Trial transcript pp. 154-156; 188).

Roland (Kempie's son) hear the shot, looked outside, observing Jones with a silver thing in his hand.  Roland had observed Jones with a silver gun the night before. (Trial transcript p, 196).  Roland's account reflected that Pidala looked petrified. (Trial transcript p. 187).  Roland observed Charlie lying flat on the ground, with blood spurting from his forehead. (Trial transcript p. 185).

The State's evidence further reflects that Jones went inside the trailer, told everyone not to call [the police], and when Roland asked Jones if he were going to kill Roland and his dad, Jones replied, "Nope, not if you don't piss me off." (Trial transcript p. 193).  Jones grabbed a blanket/comforter, walked outside to where the body lay, wrapped Charlie's body inside the blanket and loaded it into the bed of the pickup truck. (Trial transcript pp. 192, 195).  David Sanchez and Roland Richardson saw Jones load the body into the back bed of the pickup truck. (Trial transcript p. 195).  Eckel ran out of the back of the Richardson trailer.  Sanchez, who lived in a nearby trailer, left and called 911. (Trial transcript p. 221)  Jones drove off with Charlie's body in the back of the stolen pickup truck.  In Jones' possession also was the stolen .357 revolver Jones used to kill Charlie.

The Richardson trailer was located in an area with dirt roads, orange groves, farms, and large acre plots with houses and trailers. The sheriff's officers eventually saw the pickup truck and a chase ensued (Trial transcript pp. 254-260, 264-272, 278-280).  Jones drove through orange groves, across several roads, and several miles with sheriff's units chasing him at high speeds, using their sirens and lights. (Trial transcript pp. 265, 271, 280)  Finally, the chase ended when the truck became bogged down.  Jones stuck a pistol out of the window, withdrew it, and was apprehended. (Trial transcript pp. 268, 274-275, 280-281).  A silver colored revolver with black grips was next to the center console.  (Trial

transcript  pp. 268, 275-275, 317-319).   The victim's body was in the back of the stolen truck. (Trial transcript p. 282).   A bullet fragment subsequently recovered from the victim's head was identified as having been fired from the stolen handgun. (Trial transcript p. 351). In addition, DNA tests confirmed a match with the victim's blood and the blood on Jones' shirt and hands. (Trial transcript pp. 388-389).

Under Florida law, evidence that is inextricably intertwined with the crime charged is admissible under section 90.401, Florida Statutes, because "it is a relevant and inseparable part of the act which is in issue."  Coolen v. State, 696 So. 2d 738 (Fla. 1997). Whether the evidence satisfies state law in that regard is solely a state law matter. Moreover, based on the state record, it is objectively reasonable to determine that the evidence pertaining to the thefts of the firearm and motor vehicle was sufficiently intertwined with the killing.  Further, it can be factually concluded that the theft evidence was also probative of Jones' motive and premeditated intent, as well as his identity as the perpetrator.  Jones does not overcome the presumption of correctness of implicit factual findings in denying the severance request. 28 U.S.C. § 2254 (e)(1).

Jones did not establish that the denial of severance implicated due process concerns, and the state trial court was well within its discretion in denying severance of the charges. Alternatively, even assuming joinder of Jones' offenses was error, it is objectively reasonable to conclude the joinder did not have substantial and injurious effect or influence in determining the jury's verdict, and that the error was harmless. Brecht v. Abrahamson, 507 U.S. 619 (1993); United States v. Lane, 474 U.S. at 449 (doctrine of harmless error is applicable to misjoinder cases in Rule 8 context).

Florida law recognizes that all evidence introduced during a criminal prosecution is prejudicial to a defendant. See Amoros v. State, 531 So. 2d 1456, 1258 (Fla. 1988).  Even if the evidence in question tends to reveal the commission of a collateral crime, the evidence is admissible if found to be relevant for any purpose except that of showing bad character or propensity. See Randolph v. State, 463 So. 2d 186, 189 (Fla. 1984).  In Jones' case, even if there had been separate trials, evidence of Jones' grand theft offenses would have been admissible as dissimilar fact evidence in the first degree murder and aggravated fleeing prosecution.  The grand thefts were inextricably intertwined with evidence of Jones' motive and reflective of his premeditated intent ultimately to have the victim killed. See, e.g., Fotopoulos v. State, 608 So. 2d 784, 790 (Fla. 1992) (even if there had been separate trials, evidence of each offense would have been admissible at the trial of the other to show common scheme and motive, as well as the entire context out of which the criminal action occurred).

Ostensibly to show prejudice from the joinder, Jones challenges the testimony of state witnesses, including that of Boatwright who recounted Jones' admissions regarding the killing.  This aspect of ground one is really an attack on witness credibility, a matter for the jury as fact finder to resolve.  To the extent Jones is endeavoring to attack the sufficiency of the state's evidence on any count, such a claim is procedurally barred on independent and adequate state procedural grounds.  Jones did not preserve a constitutional claim concerning the sufficiency of the evidence at trial and did not raise such a claim on direct appeal.  He has not made the required showing to overcome the procedural bars on this claim.

Moreover, Jones merely offers speculation of prejudice in suggesting that it was easy to conclude he was guilty of stealing the truck and gun as a result of joinder of the murder and aggravated fleeing counts. However, the state trial court cured any risk of prejudice with regard to the joinder by instructing the jury to consider the evidence separately for each crime charged. (Trial transcript Vol 1, R 65). See, e.g., Zafiro v. United States, 506 U.S. 534, 540-41 91993) (concluding analogous instructions concerning multiple defendants sufficed to cure any possibility of prejudice). In light of the overwhelming evidence of Jones' guilt of each charged offense for which he was convicted, it is objectively reasonable to conclude joinder of the offenses in the indictment did not result in actual prejudice to Jones. Therefore, the state courts' decisions resulted in a reasonable application of established Supreme Court precedent and a reasonable determination of the facts in light of the evidence.

Ground one does not warrant habeas corpus relief.

## Ground Two

Jones contends that the state trial court erred by arbitrarily and unreasonably limiting closing remarks to 45 minutes per "side" at his trial. This is a state court matter over which this Court does not have jurisdiction. See Stockton v. State, 544 So. 2d 1006, 1009 (Fla. 1989) (it is within the sound discretion of the trial court to limit closing argument, and what constitutes reasonable time depends on the facts and circumstances of each particular case).

Moreover, ground two is procedurally barred. Jones did not preserve a constitutional claim regarding the time limitation on counsel's arguments at trial. When the trial court

asked Jones' counsel how much time he wanted for closing argument, the following exchange occurred:

> THE  COURT:        How much time do you want for closing argument?
>
> MR. HERNANDEZ:  I don't know, 45 minutes to an hour. (Hernandez was the defense attorney)
>
> THE COURT:        That's too much.  I mean after an hour and-a-half, they're not going to be paying attention.
>
> MR. HERNANDEZ:  Forty-five minutes.
>
> THE COURT:        Okay.
>
> MR. HERNANDEZ:  Judge, I'll try to do it expeditiously, but I would rather have the -- I don't want to have a 30 minutes deadline staring at me.

(Trial transcript, Vol. 4,   Vol. 3  pp 419-420).

Thereafter, during closing remarks, Jones' counsel chose not to utilize all of the time period allotted, and upon conclusion of the final closing argument, there was no request for additional time nor complaint that the 45-minute time period was insufficient. (Trial transcript Vol 4, p. 474).  As a result, any such complaint was abandoned and waived.

The time-limitation issue did not implicate fundamental error under state law, Byers v. State, 776 So. 2d 10122 (Fla. 5th DCA 2001), and the State expressly raised the lack of preservation bar on direct appeal and alternatively addressed Jones' arguments.  The silent affirmance is presumed to rest on the independent and adequate procedural grounds raised by the State. Bennett v. Fortner, supra.  Moreover, Jones did not fairly present the constitutional dimension of his claim on direct appeal.  His state law arguments did not suffice to exhaust a federal question regarding the state court's ruling on the amount of time allotted each party for closing arguments. Duncan v. Henry, supra.

Jones did not establish valid cause in state court to excuse his defaults. Jones, in his state habeas petition, faulted his appellate counsel for not raising the constitutional dimension of his issue on direct appeal. To the extent he sought to show ineffectiveness of counsel as cause to overcome the procedural bar, his state petition did not satisfy both prongs of Strickland. In the first instance, he did not show that a constitutional argument was preserved. Nor did he show there was a reasonable probability he would have prevailed had counsel raised constitutional error in pressing the time-limitation issue on appeal.

Any cause allegation is now barred by the time limitations governing Rule 3.850 motions and state habeas petitions, as well as the state's successive petition doctrine. Additionally, Jones does not show prejudice or that a fundamental miscarriage of justice will occur if his ground is not reached.

Further and alternatively, Jones does not satisfy his burden under the AEDPA standards. The state decision is neither contrary to nor an unreasonable application of established Supreme Court precedent.

It is well-settled that a criminal defendant has a due process right to a "meaningful opportunity to present a complete defense." California v. Trombetta, 467 U.S. 479, 485 (1984). A defendant's right to effective assistance of counsel also includes the right to present closing argument. Herring v. New York, 422 U.S. 853, 865 (1975). A trial court, however, has broad discretion over the scope of summations and may limit arguments that are overly time-consuming, "stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial." Id. at 862.

In Jones' case, clerk minutes reflect the State's closing argument lasted twenty minutes, from 9:52 a.m. until 10:12 a.m.  Jones' counsel gave initial and final closing arguments that lasted an aggregate period of 41 minutes.  (Trial transcript Vol. 1, R 43). As noted, Jones' counsel did not utilize all of the time period allotted, and there was no complaint regarding the time limitation upon conclusion. (Trial transcript Vol. 4,  p.  474). The lack of request for additional time signifies counsel in actuality did not regard the time limitation as unduly restrictive on presentation of a meaningful defense.  Based on the state record, it is objectively reasonable to conclude the time frame set for arguments was not arbitrary or so unreasonable as to deprive Jones of a fair trial.

Alternatively, any alleged error was harmless.  Jones does not suggest the trial court restricted counsel in advance as to content, and Jones does not present a basis for concluding the time limitation actually prevented counsel from presenting the chosen defense.

The State adduced compelling evidence of Jones' guilt, including, among other things, Jones' belief the victim was a "snitch," Jones' attempt to "get rid of" Eckel the day of the murder, the eyewitnesses' placing the gun in Jones' hand, Jones' immediate flight from the scene and attempt to dispose of the victim's body.  All of these facts served to establish that Jones executed Charlie. Given the wealth of evidence establishing his guilt, and in contract, Jones' failure to show that any material aspect of his defense was omitted as a sole result of the time perimeters on the parties' argument, it is objectively reasonable to conclude the trial court's control over the length of argument did not violate Jones' due process rights.

Ground two does not warrant habeas corpus relief.

Ground Three and Four

In ground three, Jones contends that his appellate counsel rendered ineffective assistance in his direct appeal for not "constitutionalizing" the direct appeal arguments concerning denial of his severance motion and the time limitation on closing arguments.

There is no duty to raise issues on appeal that have little or no chance of success. Thus, appellate counsel is not required to raise meritless issues or issues which were not preserved and are procedurally barred.  Card v. Dugger, 911 F.2d 1494, 1520 (11th Cir. 190); Bertolotti v. Dugger, 883 F.2d 1503, 1523 (11th Cir. 1989), cert. denied, 110 S.Ct. 3296 (1990); Jackson v. Dugger, 931 F.2d 712, 715 (11th Cir. 1991).

As shown in grounds one and two, it is objectively reasonable to conclude the joinder of counts and closing arguments time-allotment resulted in a reasonable application of established Supreme Court precedent.  It is objectively reasonable to conclude there was not a reasonable probability of a different outcome had counsel presented constitutional arguments.  Ground three fails under both prongs of Strickland and does not warrant habeas corpus relief.

In ground four, Jones faults his appellate counsel for not challenging a state evidentiary ruling admitting Ronald Richardson, Jr.'s testimony over his trial counsel's hearsay objection, that Jones had stolen the truck.

During Richard's testimony, Jones' counsel objected on hearsay grounds when Richardson testified his dad did not want the truck on his property because it was stolen. The witness did not relate an out-of-court statement, and the objection was properly overruled.  The witness shortly thereafter said, without objection, he and his father knew the truck was stolen. (Trial transcript Vol. 2, pp. 175-176)  Because there was no timely

objection, no hearsay issue concerning this testimony was preserved and any objection was waived.

To the extent Jones relies on his state law arguments in his state habeas petition, the state decision settles that, as a matter of state law, the underlying issue was either procedurally barred on independent and adequate state procedural grounds or was meritless as a matter of state law.

Where, as here, a state court's adjudication represents the resolution of an underlying state law issue, this Court owes a very high degree of deference to that determination. Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984), modified, 731 F.2d 1486, cert. denied, 469 U.S. 956 (1984).   The state habeas court's state law determination, on either procedural or substantive grounds, furnishes independent and adequate state grounds to deny relief on ground four. Further and alternatively, it follows that appellate counsel's performance cannot be deemed deficient for not urging the unpreserved issue. When shown a photograph depicting the stolen truck, Richardson identified it as stolen, without objection. (Trial transcript Vol. 2  p. 192).

Furthermore, Jones does not plead facts showing that Richardson did not have sufficient knowledge to know the truck was stolen.  Nor does Jones account for the presumption attendant with the state's adducing evidence of Jones' recent possession of the stolen property, not satisfactorily explained. Section 812.022(2), Florida Statutes. Based on the properly admitted, unobjected to evidence concerning the stolen nature of the truck and Jones' exclusive and recent possession of the stolen truck, it is objectively reasonable to conclude there was no reasonable probability of a different outcome on

appeal had appellate counsel raised the hearsay issue. Ground four does not warrant habeas corpus relief.

## Ground Five

Jones alleges his trial counsel rendered ineffective assistance by not securing experts on ballistics and gunshot residue on behalf of the defense. Jones' allegations are facially and legally insufficient to show that counsel was compelled to adduce the proposed evidence to be reasonably effective. Jones did not identify an expert who would have been prepared to testify that ballistics testing would have necessarily yielded the conclusion Jones reached, namely that he could not have shot the victim in the face from his position.

At least one reasonably competent attorney could determine that a ballistics gunshot analysis would not necessarily establish that Jones could not have shot the victim. Indeed, one such attorney could forego a request for experts on these matters to avoid the risk that such analysis might serve to inculpate Jones, especially where the eyewitness testimony pointed to Jones as the trigger man.

Jones' claim fails under both prongs of the Strickland test and ground five does not warrant habeas corpus relief.

## Ground Six

Jones contends his conviction for grand theft of a motor vehicle violates the prohibition against double jeopardy. The thrust of his argument is that he was released on the grand theft "as a result of lack of witnesses." Jones does not suggest he was tried for the offense prior to his indictment. The state trial court found from the state record that the State filed a letter indicating the charge was not filed by information because it was duplicative of the charge recommended for filing in another case. The state trial court

further found Jones was not charged in the other case, case no. 00-1788, and Jones' release on his recognizance on the charge did not have the effect of dismissing the other case. Jones does not overcome the presumption of correctness of these factual findings.

Jones' double jeopardy claim, though couched in constitutional terms, really presents a state law issue over which this Court does not have jurisdiction. Under state law at the time of Jones' case, a prosecution could be instituted even if there was a finding of no probable cause at a preliminary hearing. State v. Hernandez, 217 So. 2d 109 (Fla. 1968). In other words, release on a finding of no probable cause did not void further prosecution. Fla. R. Crim. P. Rule 3.133(b)(5).

Moreover, Jones' release on the grand theft charge prior to trial did not preclude his indictment [on double jeopardy grounds]. Jones does not claim specifically that there was a finding of no probable case. Even if he had been released on such basis, Jones could still have been indicted for grand theft along with the other offense.

In Collins v. Loisel, 262 U.S. 426 (1923), the supreme Court held that a preliminary examination is not a trial, and therefore, a discharge upon the conclusion of examination is not an acquittal for double jeopardy purposes. It is an objectively reasonable application of Collins and its progeny to conclude Jones' pretrial release on the grand theft charge did not preclude his prosecution via indictment.

Jones alleges that a due process deprivation resulted from dismissal of the grand theft charge on the premise that he was not prepared to defend against the charge. This aspect of ground six is procedurally barred.

Alternatively, Jones fails to show the state decision was contrary to or resulted in an unreasonable application of Supreme Court precedent or an unreasonable determination

of the facts in light of the evidence.  The state record is sufficient to conclude that Jones had adequate notice of the charge to satisfy due process guarantees.

Ground six does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Jones' petition is dismissed, with prejudice.  The Clerk is directed to enter judgment against Jones and to close this case.

ORDERED in Tampa, Florida, on  July 20, 2005.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Claude K. Jones